Jeffrey B. Maltzman, CA Bar No. 131758
Edgar R. Nield, CA Bar No. 135018
Gabrielle De Santis Nield, CA Bar No. 110930
Rafaela P. Castells, CA Bar No. 290828
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile:  (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com

Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STANLEY DACHINGER and LINDA DACHINGER and JACKIE BROCK and JANIS BROCK,<br><br>    Plaintiff,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>    Defendants. | CASE NO.: 2:20-CV-03847-RGK-SK<br><br>**DEFENDANT PRINCESS CRUISE LINE LTD.'S MOTION TO DISMISS**<br><br>Date:  July 27, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Magistrate: Hon. Steve Kim<br>Filed:  04/28/2020 |

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD ........................................................................................6

III.    MEMORANDUM OF LAW ..............................................................................6

    A.    Federal Maritime Law Applies to Plaintiffs' Claims.............................6

    B.    Plaintiffs Cannot Recover for Emotional Distress.................................7

        1.    Plaintiff Janis Brock's Allegations Do Not Satisfy the Zone of  Danger Test ................................................................................7

        2.    To Recover for Emotional Distress Plaintiffs Stanley Dachinger,    Linda Dachinger, and Jackie Brock Must Allege Symptoms.........................................................................11

        3.    To Recover for Emotional Distress All Plaintiffs Must Plausibly   Allege a Physical Manifestation of the Claimed Distress..................................................................................12

    C.    Plaintiffs Cannot Recover for Fear or Even a Mere Diagnosis, Without More, as a "Physical Harm" ...................................................14

    D.    Plaintiffs Have Not Plausibly Alleged Causation................................15

    E.    Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Cautioned Against .............15

    F.    Plaintiffs' Claims for Punitive Damages Are Foreclosed as a Matter of Law and Should be Dismissed or Stricken ..........................16

V.      CONCLUSION ...............................................................................................19

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

Cases

*Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) ............................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................6

*Bonner v. Union Pac.*, 123 F. App'x 777 (9th Cir. 2005) ........................................9

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) ..................................8

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) .......................3, 8, 10, 11

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015)
.................................................................................................................................9

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) ................................................9

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) ...............12

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) ................................................17

*Ellenwood v. Exxon Shipping*, 795 F. Supp. 31 (D. Me. 1992).............................13

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ..............................................18

*Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749 (M.D.N.C. 2014).......................9, 11

*Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190 (2d Cir. 2011) .......................9

*Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001).........11

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)..7

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ..........................12

*Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997) .3, 7, 8, 9, 10, 11, 12

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986).............................................17, 18

*Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749 (C.D. Cal. Sept. 28, 2018).10

*Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018).............3, 8

*Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003)....................3, 7, 8, 9, 10, 16, 18

*Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23 (1st Cir. 2018)............11

*Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir.1988)..............................................9

*Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) .............................9

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) ................................11

*Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) .....................8

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) .......................................7

*Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) ......12

*The Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019)..............................16, 17, 18, 19

*Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560 (11th Cir. 1991) ...............7

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995)......12, 13

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) .............................................7

*Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002)..............................................................................................................................12

## Statutes

46 U.S.C. §30303...........................................................................................................18

## Rules

Fed. Rule Civ Pro 12(b)(6) .....................................................................................6, 17

Fed. Rule Civ Pro 12(f) ..........................................................................................17

L.R. 7-3 .........................................................................................................................1

**MALTZMAN & PARTNERS**
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Defendant, PRINCESS CRUISE LINES, LTD. (hereafter "Defendant" or "PRINCESS"), hereby files this Motion to Dismiss the Complaint filed by Plaintiffs herein. In the interests of judicial economy, the court is hereby advised that this motion is identical to the Motion to Dismiss filed in the matter of *Francis Shay, et al. v. Princess Cruise Lines, Ltd., Case No. 2:20-cv-04064,* in that both are premised on nearly identical Complaints, involve Plaintiffs who were aboard the same cruise, and involve a combination of Plaintiffs who never contracted COVID-19 (Janis Brock) and those who at some undisclosed time after their cruise tested positive for COVID-19 (Stanley Dachinger, Linda Dachinger, Jackie Brock). None of the Plaintiffs allege having any symptoms of the virus, any substantial physical manifestation to their emotional distress, nor any facts connecting Defendant's alleged conduct with their positive COVID-19 diagnosis. Other than a conclusory allegation that Plaintiffs Stanley Dachinger, Linda Dachinger, Jackie Brock "suffer from physical … harm from the disease," (Compl. ¶¶ 25, 29), Plaintiffs allege only "emotional distress." For the reasons set forth below, Plaintiffs' Complaint should be dismissed.

This motion is made following several conferences of counsel pursuant to L.R. 7-3 which took place between May 7, 2020 and June 1, 2020.

## I.      INTRODUCTION

This is a tort case brought by Plaintiffs who make only a conclusory allegation of "physical … harm" (Compl. ¶¶ 25, 29), and whose allegations of emotional harm are squarely foreclosed by established precedent. The Court should dismiss this case for failure to state a claim.

Plaintiffs allege that they were among the thousands of passengers on the *Grand Princess* cruise ship who embarked on February 21, 2020. (Compl. ¶¶ 13, 14.) Like the vast majority of those passengers, Plaintiffs do not allege that they suffered any physical symptoms of COVID-19. Plaintiffs claim, without explanation, that merely by virtue of being on the same cruise ship with some individuals that were on the prior cruise, they were at "actual risk of immediate physical injury." (Compl. ¶ 19.)

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1   Plaintiffs' Complaint is nearly identical to numerous complaints filed by the same

2   Plaintiffs' attorneys representing other passengers aboard this same cruise seeking

3   emotional distress damages based only on a fear of contracting COVID-19. The sole

4   difference between this Complaint and the form complaint Plaintiffs' counsel filed in

5   their pure "Fear of COVID-19" cases is the addition of a single passing mention that

6   three of the Plaintiffs contracted COVID-19 at some unspecified time. But courts have

7   held that a bare diagnosis, without any actual symptoms causing functional

8   impairment, is not a cognizable physical harm sufficient to support a disease claim

9   such as is alleged here. Nor does a mere diagnosis support a claim for emotional

10  distress; courts hold that plaintiffs must allege objectively serious physical

11  manifestations of their claimed emotional distress.

12  Plaintiff Janis Brock asks this Court to recognize an unprecedented theory of

13  liability for emotional distress, unmoored from any physical harm, that is squarely

14  foreclosed by Supreme Court precedent. Janis Brock seeks damages for emotional

15  distress from fear of contracting COVID-19 based solely on being aboard the same

16  cruise ship along with approximately 3,700 other passengers and crew, some of whom

17  could have interacted with individuals from the preceding cruise who were later

18  diagnosed with COVID-19 after their cruise ended. (Compl. ¶ 18.) If accepted,

19  Plaintiff's theory would open the door to open-ended liability for every business,

20  school, church, and municipality across America, stalling economic recovery in the

21  wake of the COVID-19 pandemic and complicating the ability of businesses to

22  reopen. Plaintiff Janis Brock is among over 125 individuals who have filed nearly

23  identical lawsuits against Defendant, each seeking one million dollars in

24  compensatory damages for emotional distress plus punitive damages based only on

25  their fear that they could have contracted COVID-19. Significantly, Janis Brock does

26  not claim to have contracted COVID-19, to have suffered any symptoms of COVID-

27  19, or even that to have ever came into direct contact with the virus. The Supreme

28  Court has squarely held that a plaintiff cannot recover for emotional distress stemming

2

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  from potential exposure to a disease "unless, and until, he manifests symptoms of a

2  disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). This

3  rule applies to claims of emotional distress brought under federal maritime law.

4  *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018). Supreme

5  Court precedent thus requires dismissal here, because Plaintiff Janis Brock does not

6  claim to have either contracted COVID-19 or had sufficient symptoms of disease to

7  establish to have contracted the virus as a result of Defendant's conduct. The Supreme

8  Court has consistently reaffirmed this rule precisely to avoid the oppressive societal

9  costs that would occur if claims like Plaintiffs' could go forward. As the Court has

10 explained, "contacts, even extensive contacts," with potential carriers of diseases "are

11 common." *Metro-North*, 521 U.S. at 434. And unlike with physical injury, "there are

12 no necessary finite limits on the number of persons who might suffer emotional

13 injury" as a result of fear of contracting an illness. *Consolidated Rail Corp. v.

14 Gottshall*, 512 U.S. 532, 546 (1994). If anyone potentially exposed to a contagion

15 could obtain damages for emotional distress, "[t]he large number of those exposed

16 and the uncertainties that may surround recovery" would prompt a "flood" of lawsuits,

17 *Metro-North*, 521 U.S. at 434, and would lead to "the very real possibility of nearly

18 infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*,

19 538 U.S. 135, 146 (2003).

20      Similarly, allowing for liability based purely on a diagnosis of COVID-19 (as

21 Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie Brock allege) without any

22 allegation they ever suffered any symptoms of the virus and without casually

23 connecting Plaintiffs' diagnosis to PRINCESS' conduct would permit virtually all of

24 the same harmful consequences. (*See Consolidated Motion to Dismiss, D.E. 31, filed

25 in Case No. 2:20-CV-02267-RGK-SK).* This is particularly important here when

26 dealing with a virus which causes no symptoms whatsoever in a large percentage of

27 the people who ultimately test positive for the virus. Even if Plaintiffs could recover

28 for their diagnosis or their fear in theory, their Complaint does not plausibly allege

3

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  facts to establish causation.  In fact, Plaintiffs never even allege they contracted the

2  disease on the vessel or as a result of PRINCESS's conduct.

3      A "flood" of COVID-19 lawsuits has already begun including over 30  lawsuits

4  just from this one cruise ship, with similar cases filed relating to passengers on other

5  cruises and other vessels. And there is no reason to think the flood will abate. As of

6  the date of filing this brief, approximately 2 million cases of COVID-19 have been

7  confirmed in the United States and approximately 7 million cases worldwide.[1] Given

8  the millions of confirmed cases of COVID-19, it is inevitable that thousands of

9  schools, nursing homes, shopping centers, stadiums, parks, and businesses across

10  America have had cases on their premises. Plaintiffs' claims threaten the ability of

11  businesses to reopen and for the economy to resume.

12      A positive COVID-19 test result, without more, cannot be carte blanche to sue

13  any business that had an infected individual patronize that business at some point in

14  time in the past. To allow Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie

15  Brock to bring such a claim without alleging they suffered any real harm and without

16  any evidence establishing causation between their diagnosis and Defendant's alleged

17  conduct would forestall the economy's reopening. This is especially troublesome

18  considering the extent of asymptomatic cases where an individual tests positive for

19  COVID-19 yet never exhibits symptoms.  By allowing this case to go forward as pled,

20  anyone with a positive COVID-19 test could pick the deepest pocket business they

21  visited and claim they are entitled to millions of dollars in damages simply because

22  another individual who later tested positive had been in the same area previously.

23  Businesses cannot open if they are to be held liable to everyone who visited their

24  business and later tests positive for COVID-19.

25      And if Plaintiff Janis Brock's theory of liability succeeds, then all of the

26  millions of individuals who passed through those venues can similarly claim to have

27

28  [1] *See* Coronavirus Disease 2019 (COVID-19), Cases in the U.S., Centers for Disease Control and
Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

DEFENDANT'S MOTION TO DISMISS                    2:20-CV-03847-RGK-SK

1   suffered emotional distress even if they never contracted the illness. Straightforward
2   application of the Supreme Court's rules governing these types of disease claims will
3   prevent the cataclysmic result of allowing open-ended liability. The likelihood of
4   endless liability for every business, church, school and other venue in America under
5   Plaintiff's expansive theory is even more likely in the context of COVID-19, which
6   is now known to be transmitted by asymptomatic individuals which no defendant
7   could realistically detect with current testing limitations. The Supreme Court's limits
8   on such claims are intended to avoid exactly that result, and a straightforward
9   application of those limits mandates dismissal.

10   Plaintiffs are seeking over $1 million each for emotional distress because they
11   feared they might contract COVID-19 (Janis Brock) or because they later tested
12   positive for the virus (Stanley Dachinger, Linda Dachinger, and Jackie Brock). Courts
13   require that a plaintiff experience symptoms of their contracted illness and serious
14   physical consequences from their emotional distress before allowing recovery for the
15   damages alleged herein. None of the Plaintiffs here allege either.

16   For Plaintiff Janis Brock, there is also a second, independent barrier to
17   Plaintiff's claims because in addition to requiring that a plaintiff contract the disease,
18   courts further require that the plaintiff's fear must give rise to serious physical
19   consequences before emotional distress damages can be recovered. Mere anxiety or
20   fear about their health is legally insufficient to support a claim for emotional distress
21   in a fear of illness case. Janis Brock does not claim she ever contracted COVID-19,
22   nor does she allege serious physical consequences stemming from her alleged
23   emotional distress.

24   Finally, Plaintiffs' request for punitive damages is flatly insufficient under the
25   strict standards governing punitive damages in maritime claims.

26   While evidence will ultimately show that Plaintiffs' factual allegations against
27   PRINCESS are inaccurate and misleading, even accepting the allegations as true for
28   the purposes of this Motion, the Complaint makes clear that Plaintiffs' claims fail to

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

5

1  allege sufficient facts to state a claim and must be dismissed.

2  **II.   LEGAL STANDARD**

3      To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to

4  state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

5  U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief

6  above the speculative level, … on the assumption that all the allegations in the

7  complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The

8  plausibility standard "asks for more than a sheer possibility that a defendant has acted

9  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers

10  labels and conclusions or a formulaic recitation of the elements of a cause of action

11  will not do." *Id.*

12  **III.   MEMORANDUM OF LAW**

13      Recognizing the potential for widespread liability in disease exposure cases,

14  courts apply strict limits on such cases. The limits include the requirement that a

15  plaintiff must suffer symptoms of the illness **and** must plausibly allege serious

16  physical manifestations of their purported emotional distress. *Metro-North, supra;*

17  *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992); *Williams v. Carnival*

18  *Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). Plaintiffs have not

19  plausibly alleged either and thus their case must be dismissed under Rule 12(b)(6).

20  Even if Plaintiffs' claims survive, their Complaint should be dismissed based on its

21  failure to allege any facts showing Plaintiffs ever came into actual contract with the

22  virus and on its failure to allege any facts establishing causation. The request for

23  punitive damages should be dismissed or stricken.

24      **A. Federal Maritime Law Applies to Plaintiffs' Claims**

25      As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction,

26  Federal maritime law applies to Plaintiffs' claims.[2] (Compl. ¶ 3) Maritime law applies

27  ---

28  [2]   Plaintiffs' Passage Contract applicable to their voyage similarly invokes maritime law. See, https://www.princess.com/legal/passage_contract/plc.html at Section 1.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03847-RGK-SK

when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction." *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995))); *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1654 n. 10 (11th Cir. 1991) (when injury occurs aboard a ship upon navigable waters, federal maritime law governs the substantive legal issues).

## B. Plaintiffs Cannot Recover for Emotional Distress

### 1. *Plaintiff Janis Brock's Allegations Do Not Satisfy the Zone of Danger Test*

The Supreme Court has "sharply circumscribed" recovery under federal law for claims of emotional harm that are not "brought on by a physical injury or disease"—by requiring that the plaintiff be within the "zone of danger" of defendant's allegedly negligent conduct. *Ayers,* 538 U.S. at 147 (2003). The Supreme Court in *Metro-North* set forth a narrow zone of danger test in cases involving exposure to a disease stating categorically that a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 426-27. The Supreme Court has since reaffirmed *Metro-North*'s categorical rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. 538 U.S. at 141. The Court specifically "decline[d] to blur, blend, or reconfigure" the "clear line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain conditions. *Id.*; *see also id.* at 146. The Court has also made clear that its rule applies not just to claims based on exposure to toxins like asbestos, but to any claim based on alleged exposure to a disease including "germ-laden air." *Metro-North*, 521 U.S. at 437.

/ / /

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1    Under the Supreme Court edict, mere *exposure* to a contagion—even a
2   significant and substantial exposure—is insufficient to establish someone is within
3   the required "zone of danger." In *Metro-North*, the plaintiff's employer had
4   negligently exposed him to a "massive" and "tangible" amount of asbestos, placing
5   him in direct, close contact with asbestos every day for a three-year period. *Id.* at 427.
6   The plaintiff feared that this intense prolonged exposure increased his chances of
7   dying from cancer and introduced expert testimony supporting that his risk of cancer
8   had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could
9   not recover since exposure to the disease-causing substance alone was insufficient to
10  establish emotional distress liability. *Id.* at 430 (quoting *Gottshall*, 512 U.S. at 547-
11  48). The Court explained that if "a simple (though extensive) contact with a
12  carcinogenic substance" were sufficient to permit recovery, it would not "offer much
13  help in separating valid from invalid emotional distress claims." *Id.* at 434. "Judges
14  would be forced to make highly subjective determinations concerning the authenticity
15  of claims for emotional injury, which are far less susceptible to objective medical
16  proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552. The Supreme
17  Court adopted the strict zone of danger test specifically to avoid "nearly infinite and
18  unpredictable liability for defendants." *Ayers*, 538 U.S. at 146 (2003) (quoting
19  *Gottshall*, 512 U.S. at 546).

20   Indeed, courts apply *Metro-North* specifically to dismiss cruise line passenger
21  lawsuits.[3] For instance, in *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358
22  (S.D. Fla. 2018), a passenger and her family were disembarked to a hospital in
23  Barbados and claimed that, while at the hospital, they were exposed to Ebola virus.
24  *Id.* at 1360. The passengers were not allowed to return to the ship, which they claim
25  added to their anxiety and they filed suit for "severe psychological damages,
26  emotional distress, much personal discomfort, uncertainty, fear and lack of safety,"

27  _____
[3] The Ninth Circuit has expressly held that the test applies under federal maritime law.  *See Stacy v.
28  Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also, Chaparro v. Carnival
Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (per curiam).

DEFENDANT'S MOTION TO DISMISS                                      2:20-CV-03847-RGK-SK

and "undue expenses and costs." *Id.* Applying *Metro-North*, the Court dismissed their claim, holding the passengers cannot recover for emotional harm when they "do not specify any physical harm for which they seek recovery" and there were "no plausible allegations that the plaintiffs sustained a 'physical impact' merely by being sent to a hospital" which had Ebola-infected patients in the same hospital. *Id.* at 1362. Under these principals, Plaintiff Janis Brock cannot satisfy the zone of danger test.[4] She does not allege to have contracted COVID-19 as a result of exposure on the *Grand Princess*. Nor does Plaintiff allege any symptoms. Indeed, Plaintiff does not allege to have come into close contact with the disease aboard the ship to face even a possibility of contracting it. Rather, Janis Brock alleges only that other passengers on their vessel were exposed to passengers who previously had disembarked and were later confirmed to be infected with COVID-19 and that she therefore feared getting the disease. (Compl. ¶ 18.) That is nowhere near sufficient under *Metro-North*, which, again, squarely holds that a plaintiff cannot recover "unless, and until, he manifests symptoms of a disease." 521 U.S. at 427.[5]

Nor has Janis Brock plausibly alleged an "immediate risk of physical harm." Her bare assertion of being "at actual risk of immediate physical injury," is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action" that cannot

---

[4] Even setting aside *Metro-North*'s categorical rule, Plaintiff still would not have stated a claim under the zone of danger test. Federal courts routinely dismiss emotional distress claims when the plaintiff has not plausibly alleged that he actually suffered a physical impact or faced an imminent threat of physical harm. *See, e.g.*, *Bonner v. Union Pac.*, 123 F. App'x 777, 778 (9th Cir. 2005); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1355 (S.D. Fla. 2008); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *12 (D. Conn. Dec. 4, 2015); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 759 (M.D.N.C. 2014); *see also, e.g.*, *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d Cir. 2011) (affirming dismissal of IIED claim where no allegation that plaintiff was in zone of danger). Plaintiff clearly has not claimed any "physical impact"; again, it is black-letter law that an exposure to a source of disease is not a "physical impact" under Supreme Court precedent. *Metro-North*, 521 U.S. at 430.

[5] Even if Plaintiff *had* alleged symptoms, Plaintiff would still face an independent bar to show that the fear of contracting COVID-19 was "genuine and serious"—something beyond "general concern for [one's] future health." *Ayers*, 538 U.S. at 157-58 (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)); *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) (plaintiffs seeking fear-of-disease damages "must satisfy a high standard in order to obtain them").

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678. And even if exposure alone could create an "actual risk" under the zone of danger test—and it cannot—Plaintiff fails to even allege ever coming into direct contact with COVID-19 and she alleges no potential route of transmission.[6] Her failure to allege direct exposure makes the claim doubly deficient under *Metro-North*. The plaintiff in *Metro-North* had been consistently and intensely exposed to asbestos daily basis for a three-year period, and *still* the Court foreclosed recovery. *Metro-North*, 521 U.S. at 427. Plaintiff alleges nothing of the sort here.

Moreover, now that the window of potentially contracting COVID-19 has long passed, Janis Brock's claim must fail because a plaintiff may not pursue a claim for earlier emotional distress if "at the time the court reviews a claim" the plaintiff can no longer reasonably fear contracting the disease due to defendant's conduct. *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749, at *8 (C.D. Cal. Sept. 28, 2018). This rule, consistent with the zone of danger test, ensures that only those whose fears manifest in the form of an actual diagnosis can recover, in the interest of preventing a "flood" of cases inherently "less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

The Supreme Court in adopting the zone of danger test emphasized that it would allow recovery for "emotional injury caused by the apprehension of *physical impact*." *Gottshall*, 512 U.S. at 556. And in subsequently describing the test, it has equated being "placed in immediate risk of physical harm" with "escap[ing] *instant physical harm*." *Ayers*, 538 U.S. at 146. Expanding the category of "immediate risk" to cover alleged exposure to a communicable disease which the Plaintiff did not contract would be unprecedented. Because Plaintiff was not within the zone of

---

[6] There are 649 cities in California with populations smaller than the 3,700-person population of the *Grand Princess*. (*See* https://www.california-demographics.com/cities_by_population). If Plaintiff's allegation that merely being in the same population of 3,700 people is sufficient to satisfy the zone of danger requirement, then anyone who lived in any of those 649 cities could become subject to emotional distress liability whenever they invited anyone onto their premises if it was later discovered someone else in the town had COVID-19.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

danger[7] under *Metro-North*, Janis Brock's allegations of emotional distress, no matter how severe, are insufficient to survive a Motion to Dismiss.[8]

*Metro-North*'s zone of danger test governs all species of tort claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress" or otherwise. *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress claims.").

### 2. To Recover for Emotional Distress Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie Brock Must Allege Symptoms

For the period *before* Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie Brock's diagnosis, recovery for emotional distress is barred.   Under the Supreme Court's decision in *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). The Supreme

---

[7] Cases that *do* find an immediate risk of harm provide a helpful contrast to Plaintiffs' inadequate claims here. These cases involve "*threatened physical contact* that caused, or might have caused, *immediate traumatic harm*." *Metro-North*, 521 U.S. at 430 (emphasis added) (collecting cases); *see, e.g.*, *Stacy*, 609 F.3d at 1035 (freighter nearly struck plaintiff's vessel and then struck another ship, killing its captain); *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (plaintiffs were aboard ferry that nearly capsized); *In re Clearsky Shipping Corp.*, No. Civ. 96-4099, 2002 WL 31496659, *1 (E.D. La. Nov. 7, 2002) (plaintiff was aboard a docked casino boat as a vessel collided with nearby wharf); *Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001) (plaintiffs aboard ship that collided with another vessel).

[8] In *Gottshall*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight loss," followed by a "nervous breakdown." 512 U.S. at 539. The other had experienced "nausea, insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal ideations. *Id.* at 536-37. The Supreme Court held that even these significant emotional injuries were not compensable because they did not stem from either a physical impact or a near-miss physical impact—*i.e.*, neither plaintiff was in the zone of danger. Indeed, even extremely grave physical results cannot be redressed unless the plaintiff was in the zone of danger. *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot wound" because plaintiff was never in zone of danger).

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Court's hard-and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional distress claims "unless, and until, he manifests symptoms of a disease," forecloses any recovery for harm caused prior to their alleged contraction of COVID-19. 521 U.S. at 427.

### 3. To Recover for Emotional Distress All Plaintiffs Must Plausibly Allege a Physical Manifestation of the Claimed Distress

For the period *after* Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie Brock's alleged diagnosis, and for the entirety of Plaintiff Janis Brock's claim, recovery for emotional distress is barred because there is no alleged *physical manifestation* of the claimed distress. Only emotional distress that causes non-trivial physical consequences is compensable. A positive COVID-19 test result, in and of itself, is not legally sufficient to support a claim for emotional distress. Rather, courts require that emotional distress must cause non-trivial physical consequences. In other words, "[g]eneral maritime law requires an 'objective manifestation' of the emotional injury—a physical injury or effect which arises from the emotional injury." *Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) ("[S]tand-alone claims for negligent infliction of emotional distress require a physical manifestation of emotional injury."). Courts impose this physical-manifestation requirement because it "furnishes a 'guarantee of genuineness' thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Under this rule, minor physical consequences are not sufficient. *See, e.g.*, *Williams*, 907 F. Supp. At 407 (plaintiffs could not recover even though they were in the zone of danger because they "complain[ed] only of fear and/or seasickness which in most cases lasted no more than a few days"); *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injuries such as upset stomach, headache, and pulled muscles); *Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient). Here, Plaintiffs' Complaint contains no allegation of any physical manifestations of emotional distress for any of the Plaintiffs, let alone the serious and significant physical manifestation which is required. Plaintiffs' allegations that they "suffer from emotional distress" is exactly the sorts of generalized allegations of fear and anxiety that courts have held are clearly insufficient to support a claim for emotional distress. *Supra*; *see, e.g.*, *Williams* 907 F. Supp. at 407. This failure to allege a physical manifestation also provides an independent reason why Plaintiffs Stanley Dachinger, Linda Dachinger, and Jackie Brock cannot recover for the period before their diagnosis. Even if they had adequately pled that they contracted COVID-19 as a result of Defendant's conduct, their emotional-distress claims would nonetheless fail for the separate reason that they have not pled a physical manifestation of their emotional distress.

Similarly, Plaintiffs cannot recover (even following Stanley Dachinger, Linda Dachinger, and Jackie Brock's alleged diagnosis) because they have not alleged any "genuine and serious" manifestation of actual, physical symptoms. *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 157-58 (2003) (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)). As explained below, courts do not allow recovery based on mere diagnoses absent some sort of concrete, "functional impairment." This rule is necessary to avoid an anomalous, arbitrary result where a plaintiff might be able to recover for the *fear* of something that, if it came to pass, he could not actually recover for as a physical harm.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

### C. Plaintiffs Cannot Recover for Fear or Even a Mere Diagnosis, Without More, as a "Physical Harm"

None of the Plaintiffs allege any non-emotional injury other than a conclusory statement that Plaintiffs Stanley Dachinger, Linda Dachinger, Jackie Brock "suffer from physical … harm from the disease," (Compl. ¶¶ 25, 29.). Simply adding the words "physical harm" is insufficient to support Plaintiffs' Complaint.

Many persons who test positive for COVID-19 are asymptomatic. Courts reject claims of physical injury based only on positive tests for asymptomatic diseases. Rather, a plaintiff claiming "compensable harm" from a disease must "adduc[e] objective testimony of a *functional impairment*." *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) (emphasis added); *See e.g.*, *Sheridan v. Cabot Corp.*, 113 F. App'x 444, 448 (3d Cir. 2004) ("asymptomatic pleural thickening is not a sufficient physical injury to warrant damages"); *Sondag v. Pneumo Abex Corp.*, 55 N.E.3d 1259, 1265 (Ill. App. Ct. 2016) ("To qualify as 'physical harm,' the alteration of the body must have a detrimental effect in a more practical sense, such as by causing noticeable respiratory symptoms") (citing *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 897 N.E.2d 1118, 1125 (2008); *Giffear v. Johns-Manville Corp.* (Pa. Super. Ct. 1993) 429 Pa.Super. 327, 340 [632 A.2d 880, 887-88], *aff'd sub nom. Simmons v. Pacor, Inc.* (1996) 543 Pa. 664 [674 A.2d 232] (asymptomatic contraction of an illness is not a legally compensable injury); *Owens–Illinois v. Armstrong,* 87 Md.App. 699, 591 A.2d 544, 561 (1991), *aff'd in part and rev'd in part on other grounds,* 326 Md. 107, 604 A.2d 47 (1992); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 4, Reporters' Note to cmt. c, at 59–60 (2010). Plaintiffs cannot recover negligence or gross negligence without alleging physical harm.

A COVID-19 diagnosis, without more, is not in itself a compensable physical harm.  It is now accepted that most individuals who contract COVID-19 never

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

experience symptoms.[9] And the complaint contains no allegation of any actual impairment due to the alleged diagnoses. Treating a positive test result with nothing more as a "physical harm" worth $1 million in compensatory damages, plus punitive damages, expands tort liability in the same unlimited and unpredictable way as allowing claims for pure emotional distress.

**D. Plaintiffs Have Not Plausibly Alleged Causation**

All of the Plaintiffs claims fail because they do not state any facts suggesting that any conduct by Defendant was the factual or proximate cause of their positive diagnosis or fear. As pled, the Complaint makes it impossible to determine if even those Plaintiffs who caught the virus contracted it onboard versus before embarkation, at some port of call, during their post-cruise government managed transportation or quarantine, or elsewhere. As such, Plaintiffs' claims should be dismissed.

Nowhere in the Complaint do Plaintiffs allege they contracted COVID-19 or experienced symptoms of the virus on the vessel (or at all). Plaintiffs do not allege experiencing any specific physical injury or any ensuing sequelae related to COVID-19. (Compl. ¶ 25.)  They have not alleged that they were sick on the vessel, that they were diagnosed with COVID-19 on the vessel, or even that the virus entered their bodies on the vessel. Plaintiffs conspicuously fail to assert that they came into direct contact with any passengers or crew who had COVID-19.  Given that millions of people have tested positive for COVID-19, alleging causation requires more than simply saying they were aboard Defendant's vessel and then either feared or contracted COVID-19 on some unspecified date thereafter.

**E. Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Cautioned Against**

Finding Plaintiffs' claims sufficient would invite the exact harsh policy consequences the Supreme Court warned against. *See Metro-North Commuter R. Co.*

---

[9] Plaintiffs' Complaint itself acknowledges this fact, noting the rate of positive cases "especially among those without symptoms…" (Compl. at pg. 3.)

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                          2:20-CV-03847-RGK-SK

*v. Buckley*, 521 U.S. 424 (1997); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994); *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003). COVID-19 is a widespread pandemic, and is now well-known to be transmittable through airborne droplets. Any business, school, church or other venue alleged to have opened its doors a day too soon could be exposed to claims of emotional distress from anyone who stepped inside and then later tested positive for COVID-19 or feared contracting COVID-219, regardless of whether the individual alleges they came into contact with the virus at that establishment. Additionally, if a plaintiff can recover for emotional distress based on only a fear of exposure to a widespread disease like COVID-19 or on testing positive for the virus but having no symptoms, there will be no limit on who can recover in the wake of the pandemic.  This concern is even more significant in relation to a widespread and often undetectable disease like COVID-19. Airline travel and public transportation will prove impossible. Individuals who test positive after they attend a football game, transit through an airport, eat at a restaurant, or shop at a mall or store will have carte blanche to sue whoever has the deepest pockets based only on having been at a venue where someone later is found to have tested positive for COVID-19. Allowing Plaintiffs' claims to proceed as pled, in other words, endorses the "nearly infinite and unpredictable liability for defendants" that *Gottshall* and *Metro-North* expressly set out to prevent.[10] *Ayers*, 538 U.S. at 146.

## F.  Plaintiffs' Claims for Punitive Damages Are Foreclosed as a Matter of Law and Should be Dismissed or Stricken

Finally, even if Plaintiffs' claims could go forward on the merits, their claims for punitive damages are foreclosed as a matter of law and should therefore be

---

[10] A "fundamental interest of federal maritime jurisdiction" is "the protection of maritime commerce." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2287 (2019) (quotation marks omitted). The Supreme Court has urged courts to resist judicial expansions of maritime liability and remedies that would "frustrate" this protective purpose. *Id.* Allowing unpredictable and potentially crushing liability for ocean carriers in the wake of a pandemic would so seriously inhibit maritime commerce that principles of maritime law would independently require dismissal.

MALTZMAN & PARTNERS
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

1  dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

2      The Supreme Court has recently clarified several important limitations on the

3  availability of punitive damages in maritime cases, all of which make clear that

4  punitive damages are unavailable in cases alleging only emotional distress—at least

5  where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*, 139

6  S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when

7  punitive damages are available under general maritime law, and then applied that

8  framework to hold that punitive damages are unavailable in claims for

9  unseaworthiness. First, where there is no federal statute authorizing punitive damages,

10  courts must determine "whether punitive damages have traditionally been awarded"

11  in the category of case at issue. *Id.* at 2283. If they are not, then the imposition of

12  punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449, 451 (9th Cir.

13  2019) (*Batterton* "held that punitive damages cannot be recovered on claims in

14  admiralty where there is no historical basis for allowing such damages"). If the

15  imposition of punitive damages would create "bizarre disparities in the law," that

16  further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in

17  determining whether to permit punitive damages, courts must proceed "cautiously in

18  light of Congress's persistent pursuit of uniformity in the exercise of admiralty

19  jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

20      Defendant is aware of no binding precedent supporting the imposition of

21  punitive damages for negligently (even grossly negligently) inflicted emotional

22  distress or harm to a passenger. To the contrary, any "tradition" of punitive damages

23  in maritime cases is limited to cases where the defendant's conduct is truly

24  "outrageous"—cases of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at

25  452. And some courts have held expressly that punitive damages are unavailable to

26  "personal injury claimants … except in exceptional circumstances involving

27  crewmembers such as willful failure to furnish maintenance and cure to an injured or

28  ill seaman (who are viewed as special wards of the court requiring additional

17

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  protection) and in those very rare situations of intentional wrongdoing." *In re Amtrak*

2  *Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429

3  (11th Cir. 1997). As in *Batterton*, the absence of case law supporting the availability

4  of punitive damages in suits for negligently inflicted emotional distress or harm "is

5  practically dispositive." *Id.* at 2284.

6  　　But even if the history of punitive damages under maritime law were more

7  equivocal (which it is not), the imposition of punitive damages here would create the

8  same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages

9  in *Batterton*. The Court there noted that, if punitives were permitted for

10  unseaworthiness claims, "a mariner could make a claim for punitive damages if he

11  was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his

12  estate would lose the right to seek punitive damages if he *died* from his injuries." 139

13  S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the Death on

14  the High Seas Act ("DOHSA") expressly forbids the imposition of punitive damages

15  for deaths caused by incidents more than three miles offshore.  *See* 46 U.S.C. § 30303

16  (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8.

17  Under Plaintiffs' novel theory, passengers alleging exposure to a disease on the high

18  seas can freely recover punitive damages if they never contracted the disease or if

19  they got a positive test result for COVID-19 with no symptoms, and yet, if those same

20  passengers died from the disease, DOHSA would squarely bar their claim for punitive

21  damages. To avoid that arbitrary differential treatment, and to properly "pursue the

22  policy expressed in congressional enactments" like DOHSA, punitive damages must

23  be foreclosed. *Id.* at 2281.

24  　　The policies at play further cement that punitive damages cannot be available.

25  To the extent that liability *alone* did not create the "infinite and unpredictable

26  liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of punitive awards,"

27  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would make that threat an

28

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

18

unavoidable reality.[11] In turn, the open-ended threat of punitive damages would encourage more cases and hobble "maritime commerce"—the "fundamental interest served by federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.

## V.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its motion to dismiss and to dismiss this case.

DATED: June 9, 2020                     MALTZMAN & PARTNERS

                              By:    *s/ Jeffrey B. Maltzman*
                                     Jeffrey B. Maltzman
                                     Edgar R. Nield
                                     Gabrielle De Santis Nield
                                     Rafaela P. Castells
                                     *Attorneys for Defendant,*
                                     *Princess Cruise Lines Ltd.*

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

---

[11] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.